[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10236

_____

Agency No. 05-0016-AWA NO.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 7, 2009
THOMAS K. KAHN
CLERK

LANCELOT KOLLMAN RAMOS,
a.k.a. Lancelot Ramos Kollman,

Petitioner,

versus

U.S. DEPARTMENT OF AGRICULTURE,

Respondent.

_____

Petition for Review of a Decision
of the Department of Agriculture

_____

**(April 7, 2009)**

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and COHILL,[*]
District Judge.

COHILL, District Judge:

_____

[*] Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District
of Pennsylvania, sitting by designation.

Pending before this Court is a "Petition for Review" filed by former *pro se* Petitioner Lancelot Kollman Ramos a/k/a Lancelot Ramos Kollman ("Kollman"). Kollman seeks to have this court review and set aside a Decision and Order of a U.S. Department of Agriculture ("USDA") Judicial Officer rendered on October 2, 2007. He seeks remand of the matter for a full hearing on a Complaint filed against him and others for violations of the Animal Welfare Act (the "AWA"), as amended, 7 U.S.C. §§ 2131-2159, and the regulations and standards issued under the AWA, 9 C.F.R. §§ 1.1 *et seq*. (the "Regulations" and "Standards"). Congress enacted the AWA to ensure that animals intended for use in research facilities, for exhibition or for use as pets "are provided humane care and treatment." 7 U.S.C. § 2131. This Court has jurisdiction over the Petition pursuant to 28 U.S.C. §§ 2341-2350. For the reasons set forth below, we affirm the Judicial Officer's October 2, 2007 Decision and Order.

## I.  BACKGROUND

This case was initiated on April 26, 2005, when an Administrator with the Animal and Plant Health Inspection Service of the United States Department of Agriculture (the "Administrator") instituted a disciplinary administrative proceeding against Kollman, his father, Manuel Ramos, another individual named Peter Octave Caron ("Caron"), and a corporation, Octagon Sequence of Eight, Inc.

2

("Octagon") by filing a Complaint with the Secretary of Agriculture. Only Kollman remains in this case. Caron died; Manuel Ramos never responded, and a default decision was entered against him; Octagon timely answered and the proceedings against it eventually settled in April 2008.

In the Complaint, the Administrator alleged that Kollman willfully violated the AWA, the Regulations, and the Standards. More specifically, the Complaint alleged that Kollman had a small business; the gravity of his violations of the AWA, the Regulations, and the Standards was great; he knowingly operated as a dealer without a valid license; he caused injuries to two lions that resulted in the death of one of them, and he lied to investigators about his actions. Complaint, ¶ 6. The Complaint further alleged that between May 10, 2001 and the date of the filing of the proceeding against him, April 29, 2005, Kollman knowingly failed to obey a cease and desist order issued by the Secretary of Agriculture pursuant to section 2149(b) of the AWA, in *In re Lancelot Kollman, aka Lance Ramos, respondent*, 60 Agric. Dec. 190, AWA Docket No. 01-0012, which specifically provided that: "[r]espondent, his agents and employees, successors and assigns, directly or through any corporate device, shall cease and desist from violating the Act and the Regulations and Standards." Id. at ¶ 8. The Complaint also alleged that on or about September 13, 2000, Kollman operated as a dealer, as that term is defined in the

3

AWA and the Regulations, "by delivering for transportation, or transporting, two lions for exhibition, without having a valid license to do so, in willful violation of sections 2.1, 2.10(c) and 2.100(a) of the Regulations. 9 C.F.R. §§ 2.1, 2.10(c), 2.100(a)." Id. at ¶ 9. The Complaint next alleged that on or about September 13, 2000, Kollman engaged in specified conduct which constituted willful violation of section 2.40 of the Regulations, which governs the provision of veterinary care to animals. Id. at ¶ 10. The Complaint then charged that on or about December 13, 2000, Kollman engaged in specified conduct which constituted willful violation of section 2.131(a)(1) and (a)(2)(I) of the Regulations. Id. at ¶¶ 12-16. Finally, the Complaint sought to have Kollman ordered to cease and desist from violating the Act and the Regulations and Standards issued thereunder, be assessed civil penalties, and have his license revoked or suspended. Id.

On May 2, 2005, a hearing clerk from the Office of Administrative Law Judges sent to Kollman by certified mail, return receipt requested, a copy of the Complaint, the Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes (the "Rules of Practice"), 7 C.F.R. §§ 1.130.151, and a letter which stated in pertinent part:

> [a]lso enclosed is a copy of the Rules of Practice, which govern the conduct of these proceedings. You should familiarize yourself with the rules in that the comments, which follow, are not a substitute for their exact requirements.

4

The rules specify that you may represent yourself personally or by an attorney of record. Unless an attorney files an appearance on your behalf, it shall be presumed that you have elected to represent yourself personally. Most importantly, you have 20 days from the receipt of this letter to file with the Hearing Clerk an original and four copies of your written and signed answer to the complaint. It is necessary that your answer set forth any defense you wish to assert, and to specifically admit, deny or explain each allegation of the complaint.

Your answer may include a request for an oral hearing. Failure to file an answer or filing an answer which does not deny the material allegations of the complaint, shall constitute an admission of those allegations and a waiver of your right to an oral hearing.

(emphasis in original).

Kollman received the Complaint, the Rules of Practice, and the service letter on July 5, 2005. Within the twenty days, he filed a response, dated July 15, 2005, which the USDA received on July 22, 2005. The response stated in pertinent part:

I Lancelot Ramos Kollman am responding to a complaint In re: OCTAGON SEQUENCE OF EIGHT, INC., a Florida corporation doing bussiness [sic] as OCTAGON WILDLIFE SANCTUARY AND OCTAGON ANIMAL SHOWCASE; PETER OCTAVE CARON an individual; LANCELOT KOLLMAN an individual and MANUEL RAMOS an individual: AWA DOCKET #05-0016.

I Lancelot Kollman as a individual am to [sic] requesting an oral hearing of this complaint. Please send any and all responses to this address . . . .

Thus, he requested a hearing but did not offer any denial or defense. On July 25, 2005, Kollman received a letter from a hearing clerk at the Office of

5

Administrative Law Judges. The letter stated:

> Respondents Answer has been received and filed on July 22, 2005, in the above-captioned proceeding.
> You will be informed of any future action taken in this matter.

Thereafter, the case lay dormant for almost two years. On April 12, 2007, the Administrator filed a "Motion for Adoption of Proposed Decision and Order as to Lancelot Ramos by Reason of Admission of Facts" (the "Motion for Default Decision") along with a "Proposed Decision and Order as to Lancelot Kollman Ramos by Reason of Admission of Facts" (the "Proposed Default Decision"). A hearing clerk from the Office of Administrative Law Judges then sent Kollman a letter, dated April 12, 2007, stating that she had enclosed copies of the Motion for Default Decision and the Proposed Default Decision and that "[i]n accordance with the applicable Rules of Practice, you will have 20 days from the receipt of this letter in which to file with this office an original and three copies of objections to the Motion for Decision." Kollman received this correspondence on April 18, 2007.

On May 9, 2007, twenty-one days after April 18, 2007, a hearing clerk from the Office of Administrative Law Judges sent Kollman a letter. The letter stated:

> [a]n objection to Complainant's Motion has not been received within the allotted time.

6

In accordance with the applicable Rules of Practice, the file is being referred to the Administrative Law Judge for consideration and decision.

On that same day, May 9, 2007, the Administrative Law Judge (the "ALJ") issued his "Default Decision and Order as to Lancelot Kollman Ramos a/k/a Lancelot Ramos Kollman" (the "Default Decision"). In the Default Decision, the ALJ concluded, *inter alia*, that Kollman had violated various provisions of the Regulations as alleged in the Complaint and that these violations had been willful. The ALJ then ordered Kollman to cease and desist from violating the AWA and the Regulations and Standards, revoked Kollman's AWA license, and assessed a "civil penalty" of $43,500 against him. The ALJ did not explain how he arrived at the $43,500 penalty.

The Default Decision was mailed to Kollman on May 9, 2007, along with a letter that stated in part that Kollman had "30 days from the service of this decision and order in which to file an appeal to the Department's Judicial Officer." Kollman received the Default Decision on May 16, 2007.

On May 11, 2007, three days late and after the Default Decision had been mailed to Kollman, the Office of Administrative Law Judges received a letter from Kollman dated April 27, 2007, which stated: "I Lancelot Kollman hereby deny all charges and request a hearing on the allegations mentioned in the motion for

adoption of proposed decision."

On June 6, 2007, the Office of Administrative Law Judges received another letter from Kollman, this time concerning the Default Decision. In the letter Kollman stated:

> I am in receipt of your response to my denial of charges/ Judges Orders.
> I continue to deny all the charges and have documentation that proves I am not guilty of the charges stated.
> I hereby request to appeal the decision and request an oral hearing with a judge where I can present evidence.
> The letter instructs me to refer to 7C.F.R.1.145. Where can I find this information?
> If this letter is not sufficient to request an oral hearing and file an appeal, Please send information as how to do so.

On July 2, 2007, the Office of Administrative Law Judges received another letter from Kollman, dated June 26, 2007. The Office of Administrative Law Judges treated this letter as a Request for a Hearing and forwarded it to the Judicial Officer assigned to the case. On July 9, 2007, the Judicial Officer entered an Informal Order wherein he determined that: (1) Kollman's June 6, 2007 "request to appeal" letter constituted a request for an extension of time within which to file an appeal petition, (2) Kollman's request was granted up to and including July 2, 2007; and (3) Kollman's June 26, 2007 letter, filed on July 2, 2007, constituted a timely filed appeal petition.

8

On July 30, 2007, Kollman, now represented by counsel, filed a "Motion to Set Aside Default Decision and Order as to Lancelot Kollman Ramos a/k/a Lancelot Ramos Kollman" ("Motion to Set Aside Default Decision and Order").

On October 2, 2007, the Judicial Officer filed a "Decision and Order as to Lancelot Kollman Ramos" ("the Decision and Order"). Relevant to the instant appeal, the Judicial Officer found as follows. First, he found that in Kollman's July 22, 2005 response, Kollman requested an oral hearing, but failed to deny or otherwise respond to any of the allegations in the Complaint filed against him. Therefore, the Judicial Officer concluded, pursuant to section 1.136(c) of the Rules of Practice, 7 C.F.R. §1.136(c), Kollman was deemed to have admitted the allegations in the Complaint.

The Judicial Officer further found that Kollman failed to file objections to the Administrator's Motion for Default Decision and Proposed Default Decision by May 8, 2007, as required under section 1.139 of the Rules of Practice.

He also concluded that the July 30, 2007 "Motion to Set Aside Default Decision and Order" filing was an appeal petition, that pursuant to section 1.145(a) of the Rules of Practice a party may only file a single appeal petition, that Kollman did not request the opportunity to supplement or amend his July 2, 2007 appeal petition, and that the second appeal petition was filed 28 days after the expiration

9

of the time for filing his appeal petition. On the basis of these conclusions, the Judicial Officer struck the July 30, 2007 "Motion to Set Aside Default Decision and Order" from the record and did not address any issues raised in the Motion.

The Judicial Officer also determined that Kollman's AWA license was to be revoked and assessed Kollman a civil penalty of $13,750 (as opposed to the $43,500 penalty previously imposed by the ALJ). For purposes of determining this penalty, the Judicial Officer considered, as required by 7 U.S.C. § 2149(b): (1) the size of Kollman's business; (2) the gravity of Kollman's violations; (3) Kollman's good faith; and (4) Kollman's history of previous violations. The Judicial Officer concluded: (1) Kollman operated a small business; (2) the gravity of Kollman's violations, operating as a dealer without an Animal Welfare license and causing injuries to two lions with one of the lions dying, was great; and (3) based upon Kollman having been a respondent in one previous Animal Welfare enforcement case, that Kollman lacked good faith and had a history of previous violations. Based upon his finding that Kollman was deemed to have admitted five violations of the Regulations and Standards and that Kollman could be assessed a maximum civil penalty of $2,750 for each of his five violations of the Regulations and Standards, the Judicial Officer determined Kollman's civil penalty to be $13,750.

On November 15, 2007, Kollman filed a Motion for Rehearing on the

10

Default Decision, which the Judicial Officer treated as a Petition for Rehearing. On December 17, 2007, after consideration of the merits of the Petition for Rehearing, the Judicial Officer denied the Petition.

## II. STANDARD OF REVIEW

Under the Administrative Procedures Act, we must set aside any agency action that is found to be arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or without observance of procedure as required by law, or is contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2). "Under this standard, we give deference to a final agency decision by reviewing for clear error, and we cannot substitute our own judgment for that of the agency." Sierra Club v. Johnson, 436 F.3d 1269, 1273 (11th Cir. 2006), citing, Sierra Club v. U.S. Army Corps of Engineers, 295 F.3d 1209, 1216 (11th Cir. 2002) (internal citation omitted). Furthermore:

> [a]lthough the standard of review applied to final agency decisions is deferential, the matter is a little more complicated than that. Under the arbitrary and capricious standard, we must consider whether an agency's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir.1996) (quotation marks omitted). "This inquiry must be searching and careful, but the ultimate standard of review is a narrow one." Id. (quotation marks omitted).

Sierra Club, 436 F.3d at 1273-74.

11

## III. DISCUSSION

Preliminarily, Kollman raised two arguments on appeal that we find were not properly raised before the Judicial Officer, and were therefore waived. See U.S. v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("[s]imple fairness ... requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); McConnell v. U.S. Dept. of Agriculture, 198 Fed.Appx. 417, 424-25 (6th Cir. 2006), citing, 7 C.F.R. § 1.145(a) (appellate court refused to consider due process arguments raised by appellants because they had failed to exhaust these arguments by presenting them to the Judicial Officer on administrative appeal); Excel Corp. v. U.S. Dept. of Agriculture, 397 F.3d 1285, 1296-97 (10th Cir. 2005) (holding arguments waived on appeal from Judicial Officer's opinion where there was no indication in the record on appeal that the arguments had been presented to the Judicial Officer). The first of the waived arguments is that the Judicial Officer abused his discretion, committed reversible error, and violated Kollman's due process rights when he failed to accept Kollman's April 27, 2007 letter either as an objection to the proposed default decision or as a timely filed amended answer. Second, Kollman argues that the Judicial Officer abused his discretion, committed

12

reversible error, and violated Kollman's due process rights when he assessed a civil penalty against Kollman based in part on his determination that a May 2001 consent order entered into by Kollman established that Kollman lacked good faith and had a history of previous violations. Kollman argues that since the consent order was not in existence in September and December 2000, the time the events relevant to the Complaint took place, he could not be found to have violated it.

With respect to Kollman's argument concerning the monetary penalty issued against him, we specifically find, contrary to Kollman's contention, that Kollman did not properly raise this issue before the Judicial Officer when he stated in his June 26, 2007 letter "[s]o I ask please consider this I never willfully acted on what I am accused of." Moreover, with respect to Kollman's arguments about the April 27, 2007 letter, had we reviewed the issue on the merits, we would have found no error on the part of the Judicial Officer in his treatment of the letter; the letter was filed after the ALJ's Default Decision and Order had been issued and nothing in the letter established good cause for allowing an amendment of the answer as required by section 1.137(a) of the Rules of Practice, 7 C.F.R. § 1.137(a).

We now address three issues raised by Kollman on appeal: (1) whether the USDA reversibly erred in finding that Kollman defaulted and thereby admitted the allegations against him when in July 2005 he timely responded to the

13

Administrator's Complaint and requested a hearing; (2) whether the Judicial

Officer abused his discretion in striking and refusing to consider Kollman's motion

to set aside default; and (3) whether the Judicial Officer abused his discretion in

revoking Kollman's AWA license.[1]  Underscoring all of these arguments is

Kollman's contention that these actions by the agency violated principles of

fundamental fairness embodied in the Due Process Clause of the Fifth Amendment

to the United States Constitution, the Administrative Procedure Act, the AWA, and

the USDA's own rules.

We turn first to the argument that since Kollman was acting *pro se* at the

time he filed his July 22, 2005 letter, the ALJ should have construed the letter

liberally and read it as Kollman denying the material allegations of the Complaint

filed against him.  It is well established that *pro se* pleadings are to be liberally

construed. See Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).

Section 1.136 of the Rules of Practice, a copy of which was provided to

Kollman, states in pertinent part:

§ 1.136 Answer.

(a) Filing and service. Within 20 days after the service of the
complaint (within 10 days in a proceeding under section 4(d) of the

---

[1]We find any remaining arguments by Kollman lack significant merit and
therefore, further discussion of the arguments is not needed.

14

Perishable Agricultural Commodities Act, 1930), or such other time as may be specified therein, the respondent shall file with the Hearing Clerk an answer signed by the respondent or the attorney of record in the proceeding.  . . .

(b) Contents. The answer shall:

(1) Clearly admit, deny, or explain each of the allegations of the Complaint and shall clearly set forth any defense asserted by the respondent; or

(2) State that the respondent admits all the facts alleged in the complaint; or

(3) State that the respondent admits the jurisdictional allegations of the complaint and neither admits nor denies the remaining allegations and consents to the issuance of an order without further procedure.

(c) Default. Failure to file an answer within the time provided under paragraph (a) of this section shall be deemed, for purposes of the proceeding, an admission of the allegations in the Complaint, and failure to deny or otherwise respond to an allegation of the Complaint shall be deemed, for purposes of the proceeding, an admission of said allegation, unless the parties have agreed to a consent decision pursuant to § 1.138.

7 C.F.R. § 1.136. At the time Kollman was served with the Complaint, a letter accompanied it explicitly explaining to Kollman that while "[y]our answer may include a request for an oral hearing," the "[f]ailure to file an answer or filing an answer which does not deny the material allegations of the complaint, shall constitute an admission of those allegations and a waiver of your right to an oral hearing."

Even construing Kollman's letter liberally, the contents of his July 22, 2005 letter simply do not equate to a denial or other response to any of the allegations against him in the Complaint. Therefore, the USDA did not err when it concluded, pursuant to Rule of Practice 1.136(c), 7 C.F.R. § 1.136(c), that Kollman failed to deny or otherwise respond to any of the material allegations of the Complaint and thus was deemed to have admitted all those allegations.

We turn next to the argument that the Judicial Officer abused his discretion when he struck and refused to consider the "Motion to Set Aside Default Decision and Order" filed by Kollman's attorney on July 30, 2007. More specifically, Kollman's argument is that the Judicial Officer erred with respect to his treatment of Kollman's Motion to Set Aside Default Decision and Order since the USDA did not suffer any prejudice as a result of Kollman's procedural errors, the stakes involved (revocation of Kollman's license and a substantial monetary fine) were high, and Kollman's defenses were meritorious. What the Judicial Officer should have done, Kollman contends, is to have treated the Motion either: (1) as a supplement or amendment to his July 2, 2007 appeal petition, or (2) as a separate petition to reopen the proceedings pursuant to Rule 1.146(a)(2) of the Rules of Practice. In support of his position that the Judicial Officer should have treated the Motion to Set Aside Default Decision and Order as a motion to reopen the

16

proceedings pursuant to Rule of Practice 1.146(a)(2), Kollman relies on the court's decision in Veg-Mix, Inc. v. U.S. Dept. of Agriculture, 832 F.2d 601 (D.C. Cir. 1987).

We conclude that the Judicial Officer did not abuse his discretion when he failed to treat the Motion to Set Aside Default Decision and Order either as a supplement or amendment to his July 2, 2007 appeal petition. First, the Judicial Officer had already ruled that Kollman's June 26, 2007 letter was his appeal petition and section 1.145(a) of the Rules of Practice, 7 C.F.R. §1.145(a), only allows for the filing of "an appeal petition," *i.e.* one appeal petition. Second, the Motion to Set Aside Default Decision and Order was filed twenty-eight days after the expiration of the already extended date for filing an appeal petition. Finally, and perhaps most importantly, counsel never requested that the motion be treated as either a supplement or amendment to Kollman's appeal petition. Indeed, counsel basically ignored the fact that the Judicial Officer had already ruled that the June 26, 2007 letter was an appeal petition, attaching the June 26, 2007 letter to the Motion to Set Aside Default Decision and Order as Kollman's proposed Answer to the Complaint.

We also conclude that the Judicial Officer did not abuse his discretion when he failed to treat the Motion to Set Aside Default Decision and Order as a separate

17

petition to reopen the proceedings pursuant to Rule 1.146(a)(2). Rule of Practice

1.146(a)(2) is entitled "[p]etition to reopen hearing" and states:

> [a] petition to reopen a hearing to take further evidence may be filed at any time prior to the issuance of the decision of the Judicial Officer. Every such petition shall state briefly the nature and purpose of the evidence to be adduced, shall show that such evidence is not merely cumulative, and shall set forth a good reason why such evidence was not adduced at the hearing.

7 C.F.R. § 1.146(a)(2). Neither the title of Kollman's document nor, more

importantly, its contents would have put the Judicial Officer on notice that the

Motion to Set Aside Default Decision and Order was, in fact, a request that the

proceedings be reopened pursuant to Rule of Practice 1.146(a)(2).

Moreover, even if the Judicial Officer had erred in failing to consider that

motion as a motion to reopen the proceedings pursuant to Rule of Practice

1.146(a)(2), we conclude the error was harmless and did not violate Kollman's due

process rights. A request to reopen proceedings pursuant to Rule of Practice

1.146(a)(2) "shall set forth a good reason why such evidence was not adduced at

the hearing." 7 C.F.R. § 1.146(a)(2). Here, none of the evidence attached to the

Motion to Set Aside Default Decision and Order was new evidence[2] and Kollman's

---

[2]The exhibits attached to the Motion to Set Aside Default Decision were as follows: (1) Exhibit A-the paperwork transferring the two lions dated September 19, 2000; (2) Exhibit B -Kollman's Application to USDA for license dated January 6, 2006; (3) Exhibit C-January 18, 2006 letter from USDA to Kollman approving him for a license

Motion did not set forth a "good reason why such evidence was not adduced" earlier in the proceedings. Instead, Kollman simply stated "[t]hat this motion is brought upon the basis of excusable neglect and several meritorious defenses to the Complaint herein." Motion to Set Aside Default Decision and Order, ¶ 5. Presumably the basis of excusable neglect was that Kollman had originally been *pro se*, a fact which we find does not constitute a "good reason" for a late filing. See Veg-Mix, Inc., 832 F.2d at 609 (holding that one of the requirements for allowing a proceeding to be reopened under Rule of Practice 1.146(a)(2) is that the party give a good reason for the late filing).

Next we address Kollman's argument that the Judicial Officer abused his discretion when he revoked Kollman's AWA license. Kollman argues that even if deemed admitted, the allegations in the Complaint did not support a finding of "willfulness" as required under 5 U.S.C. §558(c) and therefore, he was entitled to notice and an opportunity to achieve compliance before his license could be revoked. Notably, the USDA argued that Kollman waived this argument by failing to present it to the Judicial Officer. Liberally construing Kollman's June 26, 2007 letter, which was filed while Kollman was *pro se* and which was treated by the

---

under the AWA; and (4) Exhibit D - Kollman's June 26, 2007 letter to ALJ Davenport which was treated by the Judicial Officer as Kollman's Appeal Petition.

19

Judicial Officer as an appeal of the ALJ's Decision, we find that the letter can be read to have raised the argument before the Judicial Officer that Kollman's conduct with respect to the lions and his acting as a dealer without a license was not willful and so he should not have had his license revoked. See June 26, 2007 letter ("[s]o I ask please consider this I never willfully acted on what I am accused of.").

> 5 U.S.C. § 558(c) provides in relevant part:
>
> [e]xcept in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given--
>
> (1) notice by the Agency in writing of the facts or conduct which may warrant the action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

Id. A violation is willful under this subsection "'if a prohibited act is done intentionally, irrespective of evil intent, or done with careless disregard of statutory requirements'." Coosemans Specialties, Inc. v. U.S. Dept. of Agriculture, 482 F.3d 560, 567(D.C. Cir.), cert. denied, 128 S.Ct. 628, 169 L.Ed.2d 394 (2007), quoting, Finer Foods Sales Co., Inc. v. Block, 708 F.2d 774, 778 (D.C. Cir. 1983); Potato Sales Co., Inc. v. U.S. Dept. of Agriculture, 92 F.3d 800, 805 (9th Cir. 1996) (same). For a revocation of license to be authorized, only one of the violations need

20

be willful; the government need not show that all of the violations were willful. Cox v. U.S. Dept. of Agriculture, 925 F.2d 1102, 1105 (8th Cir.), cert. denied, 502 U.S. 860, 112 S.Ct. 178, 116 L.Ed.2d 141 (1991).

The Judicial Officer found, by virtue of Kollman's failure to answer or otherwise respond to the Complaint as required under the Rules of Practice, that Kollman had admitted all of the material allegations in the Complaint, including that his relevant conduct was willful. We have already concluded that this finding by the Judicial Officer was correct. Accordingly, the Judicial Officer did not err when he found Kollman's various violations of the Standards and Regulations were willful and revoked Kollman's license without giving him an opportunity to cure.

Finally, we acknowledge Kollman's citations to cases wherein default decisions issued by the USDA and other administrative agencies were vacated on appeal based upon judicial determination that under the facts of those cases the default decisions were fundamentally unfair.

In support of his fundamental unfairness argument, Kollman cites primarily to Oberstar v. FDIC, 987 F.2d 494, 504 (8th Cir. 1993) and Lion Raisins, Inc. v. U.S. Dept. Agric., Case No. CV-F-04-5844 (E.D. Ca. May 12, 2005). These decisions, however, are distinguishable. First, the cases were in completely different procedural postures than the instant case. The default decision at issue in

21

Oberstar came after the parties had already litigated substantive issues in a related case, and were awaiting an appellate ruling. The default decision in Lion Raisins came after a substantive motion to dismiss had been filed and the case involved parties with whom a second action was already pending and was being vigorously defended by Lion Raisins. Indeed, in both cases the courts emphasized their displeasure with the agencies' attempt to "end run" around the merits of the case with procedural maneuvers. This simply was not the posture of the instant case, where the case sat idle with respect to Kollman for almost two years until the ALJ jump-started it with a *sua sponte* motion to show cause why the complaint should not be dismissed and stricken from the docket for failure to take further action in the case.

Second, in both Oberstar and Lion Raisins, the courts emphasized that good cause had been shown for the late filing of the respondents' answers such that the rendering of the default decision was unfair. In contrast, Kollman did not establish good cause for the insufficiency of his response to the Complaint which included neither denials nor defenses even after he had been given explicit directions as to how to respond to the complaint and the consequences of a failure to follow said directions. Nor did Kollman provide good cause for his failure to timely proffer evidence in an attempt to demonstrate his innocence of the charges.

The bottom line is that inquiry in these types of cases is fact intensive. Upon review of the overall fairness of the proceedings in this case, the Judicial Officer's Decision and Order did not violate the principles of fundamental fairness embodied in the Due Process Clause of the Fifth Amendment to the United States Constitution, the Administrative Procedure Act, the AWA, and the USDA's own rules.

Although we affirm the decision of the Judicial Officer, we must say that the actions of the agency were not above reproach. In fact, they were virtually glacial and hardly represent "best practice" by a government agency. The Complaint was not filed until April 29, 2005, approximately five years after the alleged violations pertaining to the two lions. Kollman filed his response to the Complaint on July 22, 2005. Thereafter, no action was taken by the agency with respect to Kollman until March 1, 2007 when it was presented with a February 1, 2007 *sua sponte* order from the ALJ. The order commanded the Agency to show cause why the action should not be dismissed and stricken from the docket for failure to take further action in the case. Only then did this case begin to move along the judicial path, with the Decision and Order finally filed by the Judicial Officer on October 2, 2007, more than seven years after the conduct related to the two lions occurred.

IV. CONCLUSION

For the foregoing reasons, we affirm the Judicial Officer's October 2, 2007 Decision and Order.

AFFIRMED.